The first case for argument this morning is 16-1981, Petro-Hunt v. United States. Mr. White, whenever you're ready. Good morning, Ron. I'm Ralph White. I represent Petro-Hunt, L.L.C. I'm in this action, and I would like to start by saying that this is a very I think this is a very unique case. It's a very interesting case. It's a case, the 1950 Fifth Circuit decision in the Nebo case did several things. It found that the government's representatives from the Department of Agriculture represented to my class predecessors in title that if they sold the surface of this property to the government that the ordinary rules of prescription in Louisiana law to mineral servitude would not apply, and that they could keep their minerals in perpetuity. Yeah, no, it is an interesting case, and we've all read the long history of it. Let me just ask you a process question, which is we've got the issue of the statute of limitations that involves a lot of these claims, and then we've got these Tohono questions based on the Tohono case. If we were to hypothetically agree with the government's position and the court of claims position on the statute of limitations questions, what is left? Are there other claims that fall within the statute of limitations, but were dismissed based on Tohono, or does the statute of limitations issues resolve everything here? No, the statute of limitations did not dismiss the temporary takings, the takings based on the issuance of the leases by the government. On the leases that were entered into during the safe period of the statute of limitations? Well, there's an argument there we have as well, but yeah, within the six years. The leases that had been entered into, you know, pre-93 would fall, and I believe fell under the statute of limitations. There was a pattern of leases that were entered into within the six-year period. Those were not dismissed. Those are the ones that, absent a 1500 ruling, you would prevail. Right. I mean, you would prevail to be able to go to trial. And then we have an argument that the group of leases should be bigger because the accrual date should be the end of the 10-year lease, not the beginning of the 10-year lease. Yeah. For a number of reasons, the most important of which is if your claim is gone in six years and someone decides to drill one of those leases during the last four, you have no remedy, at least under the Tucker Act. So it doesn't make any sense to say that the... ...all of the temporary physical takings... I believe that's correct. ...from the statute of limitations. Yes, I appreciate that. That's a question about at what point in time is the accrual by as of the date of the lease or as of the lease, I guess, as we'll call it, or at the completion. They're 10-year leases, and so there's no vagary, there's no doubt about when they're going to end. Their 10 years is 10 years. I appreciate your argument on that particular point is borrowing, if you will, the analysis, which is clear for regulatory takings and applying it to a permanent physical taking. Yes, Your Honor, that's correct. We think they should be the same. The briefing, actually, is both sides is very clear and quite helpful to the court. I'm glad. It's not as if, like some cases we have here, the panel has to sort of try to figure out what's really in front of us, and I don't think we have that problem now. We have, with respect to the permanent taking, the accrual date was found by the Court of Federal Claims to be somewhere in the 90s. We think that the Samish line of cases, I believe Judge Clevender was on that panel, that that line of cases provides the correct rule here. Petro-Hunt did not, if Petro-Hunt had title to this property, as it thought it did because of the Nebo decision, the Louisiana statute, the long 40, 50 year history of use and possession of the property, if it had title, it had no claims, it had no permanent takings claim. So until it could determine that it didn't have title, which was a big surprise to everyone, until it could do that, it didn't know that it had a claim to pursue in the Court of Claims. So we think that that's the rule that should determine the accrual date for the permanent taking. Although, in your view, you might have viewed that you weren't certain you had title and you knew that there was an adversary who claimed they did have title. Isn't that a fair assessment of the letter that was sent to you in 92-93? I think those letters would put anyone on notice that there was a competing title. Somebody walking on your property. But I think it was an issue of title, not of taking. The government didn't say we're taking this property, the government said we own this property. And my predecessor said, no you don't. Correct me, sir, if I'm wrong. It was in the context of the government wanting to put a mineral lease, if you'll call that out, to somebody else. And you're protesting them to do it because you can't do that to my land because I own the, I mean, I have the mineral rights. That's correct. And then they filed a suit. So there is some footprint being put on your property by the government at the time that they are saying we want to lease this to somebody else. You registered an objection and we reject your objection. I still say for the permanent taking, you go back to the idea that if they have title, if it's determined they have title, they don't have a claim. So you have to know that before you have a claim. Appreciate that. And what I was going to say is that we filed a suit in 2011 that's not affected by Section 1500. So if you found that the accrual date for the permanent taking was when we said it is in March of 2007, then that claim is timely in the 2011 suit, which is just like the suit filed in 2001. So if by chance you wanted to help us, that would be a great way to do it. The 2011 suit obviates or makes the 1500 Tejano issue go away. Yes, Your Honor. But you have a hurdle you've got to cross first, which is whether or not statute of limitations is snipping you on the earlier one. Right. But we think the better reasoning is that the Samish line of cases should determine the accrual date for that permanent taking. I think it's clear. I mean, the court has to decide. This is the binary choice here. I certainly, in my little mind, couldn't find a third alternative analysis somewhere in between where you are and where the government is. The court has aided. You don't like the result from the opinions below. But I think both Judge Allegra and his colleague gave us thoughtful, careful, well-written opinions to work with. I think Judge Allegra was a very smart man, for one thing. I enjoyed knowing him. He's passed away, but I was feeling myself that he did himself justice and honor. I mean, he obviously cared a great deal about these cases, and he certainly understood the factual circumstances that make this case a difficult one. I'm sure he did, and we do still disagree with some of his conclusions, but that's why we're here. But I think he was interested in this case and was certainly taking it very seriously. On 1500, there are at least two things that differentiate this case from Central Pines, which I know the Chief Judge wrote that opinion. Central Pines didn't argue that the reference to the taking in the district court case was not a pending claim, as we have. And Central Pines did not make a constitutional argument saying that if Section 1500 prevents someone from having a Fifth Amendment taking, that the statute has to give way to the Constitution. It didn't raise either one of those two things. So those alone would distinguish it, we think, from Central Pines. Going further, Central Pines was not the successor to Nebo, and there's no representation. Those don't really present preliminary issues that we have to agree before we get to the Central Pines applicability. I mean, if we disagree with you on both of those points, then I think Central Pines does have some viability. I don't think you could disagree with that. I know you've done a very good job to try to put at least two data points in front of getting right to the question at all about whether or not the cases are similar, similar facts. If I'm hurrying, it's because I'm sensitive to my 10 minutes, and I'd still like to say something about the judicial taking. It looks like I still have some time. Yeah, well, you can go into your rebuttal as well. Okay. Go ahead. This is the poster child for a judicial taking, I think. If this is not a judicial taking, there may not be one. Here's what you had. You had the decision in 1950 establishing these property rights, and then you've got this course of conduct following that where the government records says this property, that these minerals are owned by others in perpetuity. Then you've got the use and possession of the property, the drilling of a number of wells on the property with no interference from the government over a period of years. You've got all of that. All of that, I think, goes to establish, to show an established property right, which is what Stop the Beach says you have to show that you had. So, I think the evidence would show that Petra Hunt had an established property right in the minerals. Then the same Fifth Circuit that decided they owned the minerals. Is the judicial taking the Fifth Circuit's final decision after denied in the quiet title action, or is the judicial taking in the Supreme Court's Little Lake-Mesere decision? Well, the rules of res judicata, as they used to exist at least, said that anything that was or could have been litigated was precluded. It sort of seemed to be in the mix of things what the Supreme Court did, and that's sort of Lake-Mesere. Mesere in French means misery. Yes, you are. Seem to me that's what it means to you and to the case, because the Supreme Court says, well, the attempt of the Louisiana legislature to engraft into Louisiana law the government's promise in this case failed. That's what Lake-Mesere said. That's what it says as to that case, but... And then the subsequent holding, the Little Nemo is reserved to the facts of its case. It's only good for the 800 acres that were involved there. Well, there's no... It seems to me that two of those things put together like sliding a noose around your client's neck. Well, that's only if you buy the government's view of how this works, and what the Fifth Circuit said the second time is where the taking comes into play, and the first Nebo judgment said that Act 315 applied to all such land. It referenced the 25,000-acre conveyance of which the 800 acres was a part. It was a very broad ruling, very broad judgment, and there was no... And then you've got to remember, too, that in the district court, in the second series of litigation, we won. The district judge agreed with us and held that we owned all 180,000 acres in perpetuity. Well, I was just trying to figure out in sort of your race-tunic-out argument, what is it that deserves race-tunic-out? I mean, the first decision in Nebo or what happens when the dust all settles? Because when the dust all settles, the Supreme Court has said you can give no force and effect to that Louisiana statute, period. Well, no, they said it was good as a matter of going forward, actually, to transactions that occurred after 1940, so it wasn't stricken. And you've got to also remember, Nebo's never been reversed. It's never been reversed. It wasn't reversed in Little Lake. Footnote 4 says that in Little Lake. It wasn't reversed by Central Pines because it couldn't be. It's never been reversed. It's still... The case has just never been reversed. Isn't the main problem with your judicial takings argument is the Shinnecock Indian Nation case? I mean, that seems to read pretty clear to me, and the court said we cannot review the decision of a district court in the Fifth Circuit. You don't have to do that. In fact, that's not what we're asking you to do at all. We don't want you to... We're not saying... It doesn't matter to us at this point whether the Fifth Circuit was right or whether they were wrong. All we want you to do is look at it like they say in Stop the Beach. Look at it. Look at the status of things before to see if there was an established property right. Look at the effect of that decision to see if that established property right changed. Specifically, did private property become public property as a result of that decision? That's the only inquiry that we think you have to make. Isn't that the effect of that decision? I'm sorry? Isn't that the effect of the Fifth Circuit decision converting your private property to public property? That's exactly the effect of it was converting private property to public property. That's to what you object. Well, we're saying that we're entitled to compensation for that because the property was taken. Private property became public property without compensation. How do we know there's no compensation? Nebo says so. What happens if we agree with the Circuit that they are correct ultimately in saying that your client did not have title? Well, I don't think under Stop the Beach you can look at it that way. I think you have to look at what was the status of the property before the 2007 litigation ended. In other words, what changed? I've never seen it actually. The question we have in front of us, which we're discussing and which we'll obviously hear from the government on, is whether or not, as Judge Arena helpfully put his finger on, whether the Court of Federal Claims would have to second-guess or review the Circuit. So you have an interesting question. What standard of review do we apply to that question? Is it a fact question or is it a law question? It suggests to me that it's our duty as a matter of law to interpret what the Court of Federal Claims would have to do in this case. Well, I think you just have to look at what, I mean, I'm sorry to keep repeating myself, but just look at what the status of the property was before and look at what it was after. And I just remember that Judge Arena was on the Smith case. When the Smith case says Stop the Beach didn't create this law, it just applied it. The law existed before that time. So this Court's already recognized in the Smith case that there can be a judicial taking. And I don't think it's addictive because it was the basis for determining the accrual date for the statute of limitations and the claim was dismissed based on the statute of limitations. We really haven't fairly had the precise question in front of us. Is there such a thing as a judicial taking, yes or no? I think we're here to... I mean, for example, I mean, there was an assumption below the Boise Cascade. It was a judicial takings case. I know that case came down and wrote the opinion. I know you wrote that opinion. But sure the matter is that the word judicial taking is nowhere in the briefs and nowhere in the opinion in that case. The whole question of whether or not the Court of Federal Claims was authorized to review another court was being used by the government in that case as a ground to say there was no jurisdiction over the takings case. And perhaps sub selenio there was a judicial taking concept floating in the atmosphere, but it was never nailed down in the case. That's the case that we'd ask you to apply to our case. That's the one. I don't know if I'm into my rebuttal time or... You've exceeded everything you have. But that's... Okay. Boise Cascade... Not your genial response to our question. That's our case. Boise Cascade is where we want you to go with this. That's exactly our case. And I think that that interpretation was correct. There is jurisdiction for that claim. Okay. Let's leave it at that. We'll restore three minutes of rebuttal. He's the court, Catherine Barton, for the United States. With me at council table is Emily Weaver, also from the Department of Justice. I think this case... The court should affirm all three decisions, all three of the Court of Federal Claims, each of which is based on well-established precedent and unexceptional principles. The statute of limitations decision, dismissal, is based on the common approach that the plaintiff... that the claim accrues when the plaintiff knew or should have known of the government's exercise of control. Knew or should have known, but at a time when you were unsure what the title was. Well, of course... I mean, if you take the lay of the land, you start off with the original promise by somebody in the Department of Interior, whoever it was, left a letter and said, don't worry, state law will apply. And then you have the statute is passed. Then you have NEMO, which is a data point very much in favor of your adversary. First NEMO, right? And then somebody scratches their head. Maybe somebody says, I don't know who has the title. It's blowing in the air. And then the uncle comes along and says, it's ours. So your view is that Petrohan was stuck with the... had to believe that you were right when you said it was yours. That means it can't be theirs. Therefore, they should go to court. But first, we had mineral leases on the land. We were exercising control over it. Their takings claims are based in part on those mineral leases. And it's just common for somebody to say, hey, we think that's ours. You're doing something on it. That's a taking. You should come to this court. Can you think of a case where the statute of limitations accrual date was laid up against this question about title? I couldn't find any case where the precise argument that Petrohan is making here had been made in another case, that is to say where there was doubt in the mind of the would-be landowner as to whether he actually did or did not own, therefore wanted to avail himself of a statutory available judicial remedy, that is to say the quiet title action in the district court, and didn't want to trouble the world with courts with a taking claim until they knew whether they did or did not own the property. I'm not aware of a case like that, but the point is I think here that there are limitations in the CFCs. I mean, that's not even necessary. Your adversary didn't address what I'm talking about now, but it seems to me as to what your adversary is saying is in a setting where you are juxtaposing on the one hand the statute of limitation and what I would call for your benefit normal accrual rules, he's saying it should be a little different when you've got a quiet title situation on the other side of the scale. But here, I mean, all those title issues, the question that's relevant for the statute of limitations in the CFC is whether it's a necessary element of the claim. Otherwise, they're required to come to the CFC within the statute of limitations. The statute of limitations doesn't approve until there's a necessary element. You at least have to have a good faith belief in ownership and property in order to file an accrual set of claims. Otherwise, you file a frivolous claim. But they absolutely believed they owned the property. I mean, they definitely thought they owned it. They say they thought they owned the property until the Fifth Circuit litigation was done in 2007, that they thought it was theirs based on NEBO oil. So that's a typical takings claim where they should have come to the CFC directly. And all those, the same, the CFC would have had to say, well, do you own the property? Has the government taken your property? Do you own it? Are these mineral leases on the government's property or yours? And in order to do that, they would say, well, you say you have a perpetual right to these servitudes. Do you? And they'd have to go through the analysis that the Fifth Circuit did. Is NEBO oil, is it leased judicata? And then if it wasn't, as the Fifth Circuit said, they'd have to say, well, have they prescribed? So it would be the exact same analysis. And there would be, just as there is now, and with regard to the quiet title, having litigated those issues between the two parties, there would have been a preclusive effect. Moving to the temporary physical takings argument based on the execution of the leases, the argument there is, on your behalf, if the statute of limitations begins to run as of the date of the lease, that's when the landowner knows that you've exercised your claim to ownership of the property. His argument is that no, you shouldn't, the statute shouldn't start to accrue until the end of the lease. So what's wrong with his argument? He has some interesting state law requirements and assessments and state law things that affect the value of the lease that suggest that you should wait until the end. Well, the first thing that's wrong with it is this court's decision in Caldwell, which held that the government action is when a claim that arises out of the same government action accrues at the time of the government action, regardless of whether it's a temporary or permanent taking claim. Let me put it this way. Just assume for purposes of argument this was a regulatory takings claim and that what had happened here was that, oh, I don't know, some department of the federal government had decided for itself it would sort of drill on the property and take up the resources for the benefit of some government agency. So Susan says this was a regulatory taking that the government exercised various regulatory authority. In that case, he'd be right, wouldn't he, about when the statute of limitations accrues? I don't see why, no. I mean, that just sounds like a typical... Part of the argument was borrowed from regulatory takings cases where you wait to see what the effect of the regulation is before you decide because you don't know, for example. It's flooding my land and we don't know until at some stage in the game after the initial flooding began before the property owner should be deemed to have run into court. The flooding cases are a special class. There's sort of this stabilization principle. Flooding and erosion are kind of a special class. He isn't making that distinction. And those are physical. He's sort of saying that regulatory takings law as a general proposition grants you a date for the accrual of the statute of limitations when the landowner was... When the invasion of the right regulatory was far enough in that you could kind of know that that's what they really meant to do. That's just... That's not correct. That's not this court's precedent. That's not correct. The only case that said that is Crapel, which they cite. But it was dicta because it didn't matter whether the... It was outside of the statute of limitations whether it was at the beginning or the end of the time period in question. And Caldwell came after that in a case that is actually holds with regard to actually a situation where we believed at least the court... This court decided differently in the end but we believed the temporary taking that was given rise to by the government action was a regulatory taking and that the permanent taking was a physical taking. Can you address the Tohono... Your Tohono position, 1500? Yes. It seems to me that aside from the arguments that we actually think are waived but there are arguments regarding that they didn't have a pending claim or their constitutional arguments in Tohono that it's on all fours with Central Pines. Central Pines arose out of the same national forest and the same servitudes and all this and they did the same thing of filing a quiet title action with a takings claim in it that they then realized was going to be subject to a $10,000 limit and filed the claim in the CFC. What happens if we rule in your favor with respect to the Tohono argument? Does that pretty much settle everything? No, it would settle everything except the judicial takings claim with respect to the 2000 action but not with respect to the 2011 action which they filed in order to avoid Tohono. So I think it was discussed at the beginning about how the... I think counsel was correct about how it sorts out this... Taking this... The statute of limitations arguments are what the dismissal of the 2011 claim rests on. So if those are moved... The leases that aren't snared by the statute of limitations. Right. The handful, however many there are, there are a batch of leases that would be snagged by the statute of limitations if you teed the statute off of the date of the lease. And then there are a bunch of leases. A bunch of leases. I'd say they're remaining leases. So they're alive from a statute of limitations purpose. And unless you're 1500 them, they get to go to court. The... Yes, I think... Yes, that... Wait. Yes, that is... So the statute of limitations, section 1500, and the 2011... You're making an argument 1500 argument. Say, we agree with you on Tohono. Just wipe the whole thing out. Just write a 1500... Right, that and the judicial claim. But it's the... But then we still got the 2011 case to deal with because it's free of any... Right, I think they... Tohono disease. I think they effectively conceded that the... That the temporary takings claims that were dismissed on the basis of 1500 were also out of time. When they... The 2011 complaint was dismissed based on their concession that under the... If there was final judgment entered in this case, with regard to the 2000... The transcript of the concession event in front of Judge Horn is a little hard to kind of follow exactly who was giving up what. But it looked to me as if that if you take... If the statute of limitations knocks out the permanent claim, and if the statute of limitations knocks out all the leases that are pre-93, 94, and if 1500 knocks out all the leases that were after that date, and if the judicial takings claim is gone, then there's nothing left to litigate in the 2011 litigation. Right, I'm just saying that actually the section 1500 wouldn't apply to the 2011 litigation, so there... I think there's an assumption in their concession that those were also part of the statute of limitations. But I can't say that, why they made the concession. Right, but the 2011 case isn't barred by 1500, because... Exactly, that is my point. So that... But anyway, there's no dispute that the 2011 case continues on beyond... Based on the original... The way it was dismissed by the seers. So... I'm sorry, that's a little confusing, but it was... But in terms of our alternative argument that you could dismiss all the statute of limitations, the claims that were dismissed under the statute of limitations under Tohono, that would take care of the 2000, but all those would come back for... In the 2011. In Smith, we said that judicial taking was a theory. In your view, is it a theory, or is it an actual legal doctrine? I don't... It's not a legal doctrine that has been accepted by a Supreme Court decision that was in majority. There's a plurality on the Supreme Court that described in Stop the Beach that there was a judicial taking claim. Justice Kennedy, in his concurrence, as they did not find a judicial taking anyway, focused on due process or a substantive due process approach. I do think there's a general sense that there could be a way a court goes too far that might require some kind of... But there is no... Probably by the Supreme Court. There is no existing precedent of a judicial taking case that went to trial. No. On the merits. Not... Right. I mean, the best... Stop the Beach is the case, and it's... It was a plurality, and it was defined that there was a judicial taking. Has a cert been denied? I mean, cert denied doesn't mean anything, but has a cert been denied in some of our cases in which we hold that, or held that we wouldn't entertain the theory on the grounds that we would have to invade or review another court's work? Oh, I mean, there's... No. Yes. Yes. There is certainly precedent, Shinnecock, you know, and other in this court that, and confirmed by the Supreme Court... I mean, affirmed by the Supreme Court that the CFC doesn't have jurisdiction over it to assess another court. But certainly the Supreme Court... The Supreme Court has held that? No, no, no. I'm just saying you... I'm sorry. I'm a little confused by the question of... Yes, there is... I'm not sure that the Court of Federal Claims from time to time will say we're not going to greet this case because it would require us to review the work of another court. This is the argument the government made in Boise Cascade without using the words judicial... Oh, right. And they made that argument and the argument was rejected and said, no, no, no, we wouldn't have to do that. So that's why they didn't go on. But I'm unaware of any Supreme Court case that has said that we are correct when we say that the Court of Federal Claims can't greet a case in which they would have to look at another court's work. No, it hasn't gone up. The issue has never... has not gone up. It would be useful if the Supreme Court would give us a ruling on that issue at some point. I think this Court's law on that is very solid and need not do that. You're in a better position to ask the Supreme Court to do things than we are. We could use the help. Okay, thank you. Thank you. I have a couple of minutes. Yes, three more minutes, please. With respect to the Caldwell versus Crapel, the Arkansas case, the Supreme Court case, ruled that you should look at all these factors in the flooding case and that we think        to look at all these factors in the flooding case than it does in the Arkansas case. So I think that we should look at all these factors in the flooding case and that we think tacitly, at least, overrules Caldwell. I want to talk about the GM cases in the judicial takings context. The GM, like A&D Auto Sales, that's a decision from this Court, and you found that there was jurisdiction. The Court didn't address it in terms of judicial takings, but the parties did in their briefs. They called the claims judicial takings. Those were the automobile dealers that lost their franchises because of the bankruptcy. And so, there was jurisdiction found there, there was jurisdiction found in Boise, and as I understand Judge Horn-Trueling, she just dismissed this case, that claim, the judicial taking claim, on the basis of no jurisdiction. So if you reverse that, it goes back and we get to maybe have that trial. The, again, reduces itself down to answering the question of whether or not to greet the case would require the Court of Federal Claims to relook or review the work of the Fifth Circuit. I'd say, I would... We made the decision in Boise Cascade, no, no, no, they wouldn't have to do that, therefore you can proceed. That's what I was going to say. I think that's what you do. But if you lose on that first question, we're sorry, we disagree with you, we think the requirement would have to look at the Fifth Circuit, then you have to sit down. No, I think Boise controls, Boise certainly controls just what we're asking you to do here. We're asking you to do exactly that. Look at the, the effect of the case. Right, but the reason why we look at the merits of that case was because we decided that to do so did not require us to look into or look behind the district court action. And the same thing is true here. No, that's what, when you say that, that's, that's the big question in the case. If, if you're assuming that the Court of Federal Claims can proceed here without having to make a judgment about what they, whether they agree or disagree with the Fifth Circuit, that's your point. Boise didn't, didn't say the injunction was wrong. Boise just said the injunction kept us from logging this property. And now, you know, now once the injunction is lifted, okay, but we had, then Boise said, well, we had to, we had a taking because we couldn't log this property for a period of time. So, all we're asking you to do is look at the effect of the Fifth Circuit's decision in 2007 when that litigation was over. Look at the effect. We, we don't care whether it's right or wrong. We're, we're lost. We're way beyond that. So, we're saying look at the effect of it. It doesn't matter whether it was right or wrong. The only thing that matters is, did private property become public property as a result of that decision? Right or wrong, doesn't matter. Just, did it happen? And then, has it ever been paid for? The answer is no. That concludes our proceedings. We thank both sides.